05-4614-ag
Grant v. DHS

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Submitted: December 12, 2007                    Decided: July 17, 2008)

Docket No. 05-4614-ag

_____

OTIS GRANT,

Petitioner,

-v-

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,

Respondent.

_____

Before:  CARDAMONE and POOLER, Circuit Judges, and KEENAN, District Judge.*

_____

      Petitioner challenges the constitutionality of 8 U.S.C. § 1432(a) (1994), which provided that an alien born out of wedlock could obtain derivative citizenship based on the naturalization of his or her mother before the alien turned eighteen but could not obtain derivative citizenship based on the naturalization of his or her father before the alien turned eighteen unless paternity had been established by legitimation.  We reject this challenge.

      Petition for review DENIED.

_____

Otis Grant, pro se, Beacon, NY, for Petitioner.

Glenn T. Suddaby, United States Attorney for the Northern District of New York, William F. Larkin, Assistant United States Attorney, Syracuse, New York, for Respondent.

_____

_____

* The Honorable John F. Keenan, United States District Judge for the Southern District of New York, sitting by designation.

PER CURIAM:

Petitioner Otis Grant, a native and citizen of Jamaica, seeks review of a June 18, 2001, order of the Board of Immigration Appeals ("BIA") affirming the January 11, 2001, order of Immigration Judge ("IJ") Mitchell Levinsky, directing Grant's removal from the United States. In re Otis Kirk Grant, No. A35 770 632 (B.I.A. June 18, 2001), aff'g In re Otis Kirk Grant, No. A35 770 632 (Immig. Ct. Jan. 11, 2001). Most of the arguments he raises already have been rejected by this circuit and are addressed in an accompanying summary order. Here we address the constitutionality of former 8 U.S.C. § 1432(a) (repealed 2000), which provided that an alien born out of wedlock automatically derived citizenship based on the naturalization of his or her mother before the alien turned eighteen but could obtain derivative citizenship based on the naturalization of his or her father before the alien turned eighteen only if the child had been legitimated. Because we have not previously decided the constitutionality of former Section 1432(a), we address that question briefly and find no constitutional defect.[1]

## BACKGROUND

We set out only those portions of the history of this case that are relevant to understanding the issue before us. Grant was admitted to the United States as a lawful permanent resident in May 1978. On May 20, 1996, a New York court convicted Grant of murder in the second degree, criminal possession of a weapon, and other offenses. On May 5, 2000, the former Immigration and Naturalization Service placed Grant in removal proceedings by service of a notice to appear charging that (1) he had been convicted of an aggravated felony and

---

[1] The BIA did not reach this issue because it found that the fact Grant's father never had legal custody meant Grant could not derive citizenship from his father. We believe that the BIA's approach creates a more difficult constitutional problem than simply addressing the constitutionality of the gender distinction embodied in the legitimation requirement and therefore directly confront that issue.

was therefore removable pursuant to Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), and (2) he had been convicted of possession of a weapon that was a firearm and was therefore removable under INA § 237(a)(2)(C), 8 U.S.C. § 1227(a)(2)(C).

At his first appearance before IJ Levinsky in August 2000, Grant claimed that he had obtained derivative citizenship through his father. The IJ adjourned the hearing three times to allow Grant to obtain an attorney and evidence of derivative citizenship. During a November 2000 appearance, Grant admitted the charges in the notice to appear. Grant also informed the IJ that his parents were never married, his mother became a citizen after Grant turned eighteen, and his father became a citizen before Grant's eighteenth birthday.

On his final hearing date, January 11, 2001, Grant produced affidavits from his father and mother in which they indicated that Grant's father had played an active part in Grant's life, provided some financial support to Grant, and visited him frequently. However, Grant testified that his father did not have legal custody.

In an oral decision, the IJ held that (1) Grant was deportable as charged; (2) he was not eligible for relief under INA § 212(c), 8 U.S.C. § 1182(c) (repealed 1996), and INS v. St. Cyr, 533 U.S. 289 (2001), because, even though his conviction occurred before the repeal of Section 212(c), Grant, unlike the respondent in St. Cyr, had been convicted by a jury; (3) Grant could not apply for adjustment of status because his murder conviction rendered him ineligible for a waiver of inadmissibility pursuant to INA § 212(h), 8 U.S.C. § 1182(h); (4) Grant was also ineligible for Section 212(c) relief because he had served more than five years' imprisonment; and (5) Grant had not attained derivative citizenship from his father because his father never had legal custody.

On appeal to the BIA, Grant argued inter alia that he had obtained derivative citizenship from his father. Incident to this argument, he contended that Section 1432(a) was unconstitutional

insofar as it allowed an alien to obtain derivative citizenship through his mother without proof of maternity but did not make the same path to citizenship available to alien children of naturalized fathers.

As to Grant's claim of derivative citizenship, the BIA held that "[i]n order for a child to derive United States citizenship . . . , proof is required that the naturalized parent retained legal custody of the child," and Grant had failed to demonstrate that his father had had legal custody. Because the Board's decision was premised on the custody requirement, it declined to reach the constitutionality of the gender distinction embodied in former Section 1432(a). In addition, the BIA rejected each of the additional bases on which Grant sought relief from removal.

In July 2001, Grant filed a habeas corpus petition in the United States District Court for the Northern District of New York. On June 14, 2004, Magistrate Judge David E. Peebles recommended that the petition be denied. Before the district court could act on the recommendation, Congress enacted the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B.,119 Stat. 231, 302. Section 106(a) of the REAL ID Act provides that a petition for review to the court of appeals is the exclusive method for challenging an administrative order of removal, deportation, or exclusion, and Section 106(c) provides that any petitions pending in district court must be transferred to the appropriate court of appeals. 119 Stat. at 310-11, 8 U.S.C. § 1252(a) & note. Accordingly, the district court transferred Grant's petition to this court.

## DISCUSSION

Former Section 1432(a) provided that a "child born outside of the United States of alien parents" who entered the United States acquired derivative citizenship if he or she met pertinent portions of the following conditions:

(1) the naturalization of both parents; or

(2) The naturalization of the surviving parent if one of the parents is deceased: or

4

(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if

(4) Such naturalization takes place while such child is under the age of eighteen years, and

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.[1]

Thus, an alien born out of wedlock can achieve derivative citizenship automatically, based on his or her mother's naturalization, before the alien becomes eighteen, if he has not been legitimated, but must show, at a minimum, that he has been legitimated in order to achieve citizenship based on the father's citizenship. Grant contends that this distinction denies him equal protection.

The BIA declined to address the constitutionality of the gender distinction and instead relied on Section 1432(a)'s "legal custody" requirement, which does not embody a gender distinction. However, Section 1432(a) is somewhat ambiguous both as to (1) whether a legitimated alien must also show that his father had legal custody, and as to (2) whether a child who has been legitimated and lives with his non-citizen father can obtain citizenship based on his mother's naturalization. On one hand, it refers to "legal custody," in the context of a "legal separation," which ordinarily occurs only when there has been a legal marriage. See generally Brissett v. Ashcroft, 363 F.3d 130, 133-34 (2d Cir. 2004). This suggests that the "legal custody"

---

[1] Section 1432(a) was repealed in 2000. Section 1431 of Title 8 now allows a child born outside the United States to derive citizenship if one of his or her parents is or becomes a citizen before the child reaches the age of eighteen and the child resides "in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence." However, this additional protection is not retroactive, see Drakes v. Ashcroft, 323 F.3d 189, 191 (2d Cir. 2003) (per curiam), and, in any case, would not assist Grant who did not live in his father's physical or legal custody.

5

requirement applies only in the context of a legal marriage. On the other hand, while stating that the mother's naturalization triggers derivative citizenship for a child born out of wedlock provided that the father has not legitimated the child, the section does not explicitly provide that the father's naturalization and legitimation of the child create derivative citizenship. If the father must show both legitimation and legal custody, but the mother need only show birth, there may be a serious constitutional problem as it may be virtually impossible for the natural father of an alien child to perform any act that would give the child derivative citizenship. See Tuan Anh Nguyen v. INS, 533 U.S. 53, 70-71 (2001) (rejecting an equal protection challenge in part because the natural father could easily legitimate or acknowledge his child).

It appears that the BIA assumed that both legal custody and legitimation were required because it held that (1) Grant did not become a citizen because his father did not have legal custody and (2) therefore the court did not need to reach the equal protection claim based on the legitimation requirement applicable to fathers. To avoid the serious constitutional and statutory interpretation problems described in the last paragraph, we assume, without deciding, that naturalization of the father and legitimation of the child before the child reached the age of eighteen would create derivative citizenship. Thus, we address Grant's argument that the requirement that the father legitimate his alien child, while the mother need not prove a biological relationship in a similar manner, is unconstitutional.[2]

---

[2] In Miller v. Albright, 523 U.S. 420 (1998), which addressed a similar statute, two of the justices in the majority would have found that the petitioner lacked prudential standing because it was her father's right to equal protection rather than her own that was violated. See 523 U.S. at 446 (O'Connor, J., concurring). None of the remaining justices agreed, although the opinions of some of the five justices who found that standing existed could arguably be distinguished on a factual basis from this case. See id. at 474 (Breyer, J., dissenting) (arguing that standing existed, in part, because the government had hindered plaintiff's father in asserting his own rights). In any case, because any standing limitation is prudential, not constitutional, see id. at 445, and the standing issue has not been resolved by this court, while an adverse answer to the merits question is dictated by Supreme Court precedent, we reach the merits. See, e.g., Turley v. Police Dep't of the City of New York, 167 F.3d 757, 761 (2d Cir. 1999) ("We find that we also need not reach the issue of Turley's standing, since the challenge fails on the merits.").

We are bound by <u>Tuan Anh Nguyen</u> to reject that challenge. In <u>Tuan Anh Nguyen</u>, the Court considered an equal protection challenge to 8 U.S.C. § 1409, which provides the requirements for derivative citizenship for a child born out of wedlock to a person who was a United States citizen at the time of the child's birth and a non-citizen. Like former section 1432(a), Section 1409 provides that a child born outside the United States automatically assumes the United States citizenship of his or her mother, but in order to obtain derivative citizenship based on the United States citizenship of his or her father, (1) the child must have been legitimated under the laws of his residence or domicile; (2) the father must have acknowledged the child in writing and under oath; or (3) paternity must have been established by a competent court.[3]

The <u>Tuan Anh Nguyen</u> Court held that the different treatment of female and male parents did not violate the Equal Protection guarantee of the Due Process Clause. 533 U.S. at 58-59. To justify legislation that discriminates on the basis of gender, the Court held, "it must be established at least that the challenged classification serves important governmental objectives and that the

---

[3] In pertinent part, Section 1409(a) provides that an out-of-wedlock child can obtain derivative citizenship:

if–
      (1) a blood relationship between the person and the father is established by clear and convincing evidence,
      (2) the father had the nationality of the United States at the time of the person's birth;
      (3) the father (unless deceased) has agreed in writing to provide financial support for the person until the person reaches the age of 18 years, and
      (4) while the person is under the age of 18 years—
          (A) the person is legitimated under the law of the person's residence or domicile,
          (B) the father acknowledges paternity of the person in writing under oath, or
          (C) the paternity of the person is established by adjudication of a competent court.

discriminatory means employed are substantially related to the achievement of those objectives." 533 U.S. at 60 (internal quotation marks and brackets omitted). The Court then found that two important governmental interests justified the gender differential embodied in Section 1409: (1) it is important to the government to be certain that a biological parent-child relationship exists, id. at 62; and (2) it is appropriate "to ensure that the child and the citizen parent have some demonstrated opportunity or potential to develop not just a relationship that is recognized, as a formal matter, by the law, but one that consists of the real, everyday ties that provide a connection between child and citizen parent and, in turn, the United States," id. at 64-65. With respect to the first interest—ensuring that the claimed biological relationship actually exists—the Court pointed out that a mother's parental status "is verifiable from the birth itself [and] . . . is documented in most instances by the birth certificate or hospital records and the witnesses who attest to her having give birth," but that there is no such obvious or compelling proof of a father's status. Id. at 62. With respect to the second—requiring at least the opportunity for a relationship between parent and child—the Court noted that while the mother is present at birth and thus has at least the possibility of developing a relationship with her child, the father does not even necessarily know that he has become a father. Id. at 65-66.

While acknowledging that Congress could have chosen different means to achieve the same ends, see id. at 69, the Court also held that the government had established that the means it chose were substantially related to its important interests, id. at 70.

Finally, the Court said that it was "mindful that the obligation [Section 1409(a)(4)] imposes with respect to the acquisition of citizenship by the child of a citizen father is minimal" because the father has several options open to him for establishing his paternity — bringing a paternity proceeding, having paternity recognized under the law of his residency or domicile, or acknowledging paternity in a sworn, written statement — and the child could avail him or herself

of other routes to citizenship as well. Id. at 70-71. It pointed out that "[t]he statute can be satisfied on the day of birth, or the next day, or for the next eighteen years." Id. at 71. Based on this reasoning, the Court upheld the constitutionality of Section 1409(a)(4).

Grant identifies no basis on which we can distinguish Tuan Anh Nguyen, and we perceive no principled basis on which we can do so. Although Section 1409(a)(4) gives the citizen father more paths to establishing that the alien child is his son or daughter than does Section 1432(a), which requires legitimation, Section 1409(a) also imposes an additional requirement absent from Section 1432(a) by demanding that paternity be established by clear and convincing evidence, 8 U.S.C. § 1409(a)(1). Although the burdens imposed by the two statutes are different, we cannot say that Section 1432(a) imposes a significantly more onerous burden than Section 1409(a) with regard to legitimation, and we therefore believe that Tuan Anh Nguyen requires us to deny review of Grant's claim. Because Grant would not be eligible for citizenship even in the absence of a "legal custody" requirement, we do not address whether that requirement exists for out-of-wedlock children or whether, if it does, it is constitutional.

## CONCLUSION

For the reasons stated in this opinion and in the accompanying summary order, we deny review.

9