# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 5, 2010

No. 09-60142
Summary Calendar

Lyle W. Cayce
Clerk

JORGE MARQUEZ-MORALES,

Petitioner,

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No.  A044-762-001

Before JOLLY, WIENER, and ELROD, Circuit Judges.

PER CURIAM:[*]

Jorge Marquez-Morales, a native and citizen of Mexico, seeks review of the order of the Board of Immigration Appeals (BIA) dismissing his appeal from an Immigration Judge's decision finding him removable pursuant to 8 U.S.C. §§ 1182(a)(9)(A)(ii) and 1182(a)(6)(A)(i).  He also seeks review of the BIA's denial of his motion to reconsider the order affirming the IJ's decision.

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

I.

Marquez-Morales was born in Mexico to his mother, Josefina Morales Andazola, a Mexican citizen. No father was identified on his birth certificate. In 1994, an Oklahoma state court awarded his father, Jesus Jose Marquez, permanent and exclusive custody of Marquez-Morales. Marquez was naturalized in March, 1998. In June 2008, the Department of Homeland Security charged Marquez-Morales as subject to removal pursuant to 8 U.S.C. § 1182(a)(9)(A)(ii). The charges alleged that Marquez-Morales had been previously removed from the United States under an outstanding removal order in December 2003, and that he had been convicted in 2005 of the offense of reentry of a deported alien previously convicted of an aggravated felony. DHS also charged him as subject to removal under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being lawfully admitted or paroled, or who arrived in the United States at a time or place other than that designated by the United States Attorney General.

Before the IJ, Marquez-Morales denied both charges on the grounds that he was entitled to derivative citizenship under former section 321(a)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1432(a)(3) (repealed 2000), which provided citizenship for a child born outside the United States through, *inter alia*, the naturalization of the parent having legal custody of the child when there had been a legal separation of the parents, or the naturalization of the mother if the child was born out of wedlock and the paternity was not established by legitimation. The IJ determined that he did not meet the statutory requirements of section 321(a)(3) and rejected his alternative argument that former section 321(a)(3) was unconstitutional. The BIA affirmed that decision.

On appeal, Marquez-Morales argues that he is entitled to derivative citizenship because the Oklahoma court's custody order should be considered a "legal separation" for the purposes of former section 321(a)(3) even though his

2

parents were never married.  Alternatively, he argues that former section 321(a)(3) was unconstitutional because it establishes "two different standards for men and women" because an unmarried mother can confer derivative citizenship on her child but an unmarried father cannot.

## II.

This court has limited jurisdiction to consider challenges to removal orders based on the commission of an aggravated felony.  The REAL ID Act amended 8 U.S.C. § 1252(a)(2)(C) to preclude judicial review of any removal order based, inter alia, on an alien's commission of an aggravated felony. 8 U.S.C. 1252(a)(2)(C); *Hernandez-Castillo v. Moore*, 436 F.3d 516, 518-19 (5th Cir. 2006). The Act provides, however, that none of its provisions "shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review."  8 U.S.C. § 1252(a)(2)(D).  We may review Marquez-Morales's "claim to be a national of the United States, and decide such claim if, as here, the pleadings and affidavits reflect that no genuine issue of material fact about the petitioner's nationality is presented." *Marquez-Marquez v. Gonzales*, 455 F.3d 548, 554 (citing 8 U.S.C. § 1252(b)(5)).  As the claim presents a question of law, our review is *de novo.  Id.*

We first consider Marquez-Morales's argument that he is entitled to derivative citizenship under former section 321(a)(3).  Because Marquez-Morales was not born in the United States, naturalization is his "sole source for a claim of citizenship." *Marquez-Marquez*, 455 F.3d at 554.  He bears the burden of proving that he qualifies for naturalization, and this court resolves all doubts on the matter in favor of the United States. *See id.*  Because he turned eighteen in 1997, the provisions of former section 321(a) apply to his claim.  Those provisions were repealed by the Child Citizenship Act of 2000, Pub. L. No. 106-395, 114 Stat. 1631 (2000), but as Marquez-Morales acknowledges, the Child Citizenship Act is not retroactive.  Thus, his claim is governed by Section 321(a). *See Nehme v. INS*, 252 F.3d 415, at 430-32 (5th Cir. 2001).

Former section 321(a) of he Immigration and Nationality Act provided that "a child born outside the United States of alien parents . . . becomes a citizen of the United States" upon "the naturalization of the parent having legal custody of the child *when there has been a legal separation of the parents*; and if . . . such naturalization takes place while such child is under the age of 18 years; and . . . such child is residing in the United States pursuant to lawful admission for permanent residence at the time of the naturalization of the parent." Marquez-Morales claims that, despite the fact that his parents never married and thus could not be legally separated, he is entitled to citizenship because his father obtained "legal custody" of him when he was under age eighteen. He contends that he is not required to demonstrate that his parents were legally separated because Congress's intent in drafting Section 321(a) was the protection of parental rights by ensuring hat only those alien children "whose real interest[s]' were located in America with their custodial parent" would be automatically naturalized.

Marquez-Morales's argument is foreclosed by this court's decision in *Nehme*, which held that a child born overseas to alien parents was not entitled to naturalization when his father was naturalized but his parents never obtained a "legal separation" or divorce under Pennsylvania law. 252 F.3d at 418-20. We also clarified that "legal separation" meant a "*judicial* separation," *id.* at 426, but he has presented no evidence that his parents were ever married or judicially separated. Other circuits have likewise concluded that former section 321(a)(3) requires a legal separation of married parents before a single parent can confer automatic citizenship on an alien child. *See Barthelemy v. Ashcroft*, 329 F.3d 1062, 1065, 1067-68 (9th Cir. 2003) (finding that because alien's parents never married and thus could not legally separate, the alien could not establish citizenship under former section 321(a)(3)); *Wedderburn v. INS*, 215 F.3d 795, 799-800 (7th Cir. 2000) (concluding that BIA acted within its

4

authority in construing "legal separation" to mean an alteration in marital status). Accordingly, we find his claim to be without merit.[1]

We also reject Marquez-Morales's argument that former section 321(a)(3) violates the Equal Protection Clause by establishing "two different standards for men and women." This court has recognized that "[a]n alien has no constitutional right to citizenship which is a privilege conferred as a matter of grace by Congress under Article I, Section 8 of the United States constitution relative to the power of Congress 'to establish a uniform rule of Naturalization.'" *Villanueva-Jurado v. INS*, 482 F.2d 886, 887 (5th Cir. 1973) (citing *Rogers v. Bellei*, 401 U.S. 815, 840 (1971)). Congress has a "completely free hand in defining citizenship as it relates to persons born abroad." *Id.* (citation and internal quotation marks omitted). Challenges to INA classifications are typically subject to rational basis review, *De Fuentes v. Gonzales*, 462 F.3d 498, 503 (5th Cir. 2006), but gender based classifications receive review under a heightened standard. In *Nguyen v. INS*, 533 U.S. 53 (2001), the Supreme Court stated that gender-based classifications in the INA must serve "important governmental objectives . . and the discriminatory means employed" must be "substantially related to the achievements of these objectives." *Id.* at 60-61 (citation omitted).

We find that *Nguyen*'s heightened scrutiny is not triggered here where Marquez-Morales has not argued a true "gender-based" classification. Marquez-Morales bases his equal protection claim on language from former section 321(a)(3), which provides that an alien child born outside the United States becomes a citizen when, among other factors, "the naturalization of the parent having legal custody of the child when there has been a legal separation of the

---

[1] We also note that Marquez-Morales has not pursued his arguments made before the BIA that his parents' relationship constituted a "common law" marriage under Oklahoma law or that he qualified for derivative citizenship under 8 U.S.C. § 1409. These arguments are therefore waived. *Proctor & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004).

parents *or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation.*" § 321(a)(3) (emphasis added).  He argues that gender-discrimination is present because "only the [unmarried] mother's naturalization" could confer derivative citizenship, whereas his father's naturalization could not confer the same.  This argument misses the mark.  Marquez-Morales's father established paternity, so the provision regarding mothers of children born out of wedlock where paternity is not established is inapplicable.  Thus, his mother was similarly powerless to confer citizenship upon him through her naturalization alone.  As such, where mothers and fathers of children whose paternity is established are treated similarly, Marquez-Morales's claim does not implicate equal protection.

Moreover, even assuming *arguendo* that he had shown a gender-based classification, we would nevertheless conclude that former section 321(a)(3) is not unconstitutional.  In *Nguyen*, the Supreme Court rejected a constitutional challenge to 8 U.S.C. § 1409(a), which prescribe how persons born abroad to one United States-citizen parent and one non-citizen parent acquired citizenship for the child when the parents were not married.  533 U.S. at 62-70.  Although the statute imposed requirements on the children of a citizen father which were not imposed when the citizen parent was the mother, the court found that the gender-based classification met heightened scrutiny as the distinction was substantially related to serving the important governmental interests of "assuring that a biological parent-child relationship exists" and "ensuring that the child and the citizen parent have some demonstrated opportunity or potential to develop" more than a mere legally-recognized relationship.  *Id.* at 62.  As there, we find that Congress is entitled to prescribe rules for citizenship that reflect differences in the way unmarried parents establish a biological tie to the alien child.

Finally, we note that two other circuits have rejected similar challenges to former section 321(a)(3).  In *Barthelemy*, the Ninth Circuit assumed without

deciding that section 321(a)(3) entitled the alien to "the higher standard of scrutiny," but held that the alien's equal protection claim failed where he admitted his father had legitimated him. 329 F.3d at 1066-68. In *Wedderburn*, the Seventh Circuit concluded that section 321(a)(3)'s classification was not a sex-based classification at all, but rather a classification based on whether or not the child had been legitimated. 215 F.3d at 801-02. Accordingly, we deny his petition for review.

PETITION DENIED.