UNITED STATES of America

v.

Lacey SCOTT, Defendant.

No. 12 Cr. 154(RJS).

United States District Court, S.D. New York.

Jan. 30, 2013.

P. Ian McGinley, Assistant United States Attorney, United States Attorney's Office, New York, NY, for Government.

Kelly Anne Moore, Esq., and Nicholas Schretzman, Esq., of Morgan Lewis & Bockius LLP, New York, NY, for Defendant.

## MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge.

Defendant Lacey Scott ("Defendant") is charged in a two-count Indictment with (1) illegally reentering the United States after committing an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2), and (2) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Now before the Court is Defendant's motion to dismiss Count One of the Indictment on the ground that he could not have reentered the United States illegally because, prior to his deportation, he derived United States citizenship from his naturalized fa-

ther. For the reasons that follow, the Court disagrees and, as stated at the Court conference on January 24, 2013, denies Defendant's motion.

## I. BACKGROUND

### A. Facts [1]

Defendant was born in Jamaica on October 27, 1981 to Beverly Taylor ("Beverly") and Duke Scott ("Duke"), who were not and have never been married to one another. (Aff. of Beverly Smith (neé Beverly Taylor), dated September 6, 2012, Doc. No. 19 ("Smith Aff."), ¶ 3.) Defendant's birth certificate identifies Duke as Defendant's father. (Decl. of Nicholas Schretzman, dated Sept. 7, 2012, Doc. No. 21 ("Schretzman Decl."), Ex. A.) On June 18, 1986, Duke moved to the United States and married Faithlyn Swaby ("Faithlyn"). (Schretzman Decl. Ex. B; Decl. of Faithlyn Scott, dated Sept. 7, 2012, Doc. 20 ("Scott Decl."), ¶ 2.)

According to Beverly, she signed a document "[i]n early 1988 ... before a Justice of the Peace in Morant Bay, Jamaica, in which [she] relinquished [her] parental rights entirely and ceded custody to Faithlyn and Duke" so that Defendant could immigrate to the United States and live with them. (Smith Aff. ¶ 5.) On February 2, 1988, when Defendant was six years old, he immigrated to the United States as a lawful permanent resident to live with his father and his stepmother. (Schretzman Decl. Ex. C; Scott Decl. ¶ 3.) On March 13, 1998, when Defendant was sixteen years old, Duke became a naturalized citizen of the United States. (Schretzman Decl. Ex. F.)

In 2005, Defendant was convicted of four federal felonies and sentenced to eighty-seven months in prison. (Decl. of P. Ian McGinley, dated Nov. 19, 2012, Doc. No. 36 ("McGinley Decl."), Ex. 1.) At his deportation hearing, on or about August 1, 2006, Defendant expressed a desire to be deported to Jamaica as soon as possible and did not ask to consult with an attorney or legal organization about his decision. (*Id.* Ex. 4.) However, the Immigration Law Judge stated that if it were determined at a later time that Defendant had, in fact, derived United States citizenship from his father, the order of deportation would be void. (*Id.*) As a result of his convictions, Defendant was deported from the United States to Jamaica on August 29, 2006.

At some point after his deportation, Defendant reentered the United States and, on or about December 26, 2011, was arrested by officers of the New York City Police Department in the Bronx for possession of a firearm, among other crimes. At no time after his deportation and prior to his arrest had Defendant applied for permission to reenter the United States, as required by federal immigration law. (*Id.* Ex. 5.)

### B. Procedural History

On February 15, 2012, a federal grand jury sitting in New York returned the Indictment against Defendant. (Doc. No. 1.) On September 7, 2012, Defendant filed the instant motion to dismiss Count One of the Indictment, arguing that, because he derived United States citizenship from his father under 8 U.S.C. § 1432(a) prior to his deportation, he cannot possibly be guilty of the crime of illegal reentry, as

---

1. The following facts are taken from the declarations submitted in connection with the instant motions and the exhibits attached thereto. In connection with the instant motions, the Court also considers Defendant's opening brief in support of his motions ("Mem."), the government's opposition brief ("Opp'n"), Defendant's reply brief ("Reply"), and the transcript of oral argument proceedings on November 26, 2012.

charged in Count One.[2] The motion was fully submitted as of November 5, 2012, and the Court heard oral argument on the motion on November 26, 2012. On January 24, 2013, the Court denied the motion. This memorandum sets forth the reasons for the Court's ruling.

## II. DISCUSSION

 Prior to its repeal in 2000, 8 U.S.C. § 1432(a) specified that a "child born outside of the United States of alien parents" who enters the United States acquires derivative citizenship if he meets the following conditions:

(1) The naturalization of both parents; or

(2) The naturalization of the surviving parent if one of the parents is deceased; or

(3) The naturalization of the parent having legal custody of the child when there has been a *legal separation* of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if

(4) Such naturalization takes place while such child is under the age of eighteen years; and

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. § 1432(a) (emphasis added).[3] Here, it is undisputed that, at the time when Duke became a naturalized citizen, Defendant was under the age of eighteen and lawfully residing in the United States. Defendant therefore argues that he qualifies for citizenship under § 1432(a)(3) because, at the time of Duke's naturalization, Duke had sole custody of him and had a "legal separation" from Defendant's mother, even though his parents were never married.[4] For purposes of resolving the instant motion, the Court presumes, without deciding, that Duke had legal custody of Defendant at the time when Duke became a naturalized citizen. However, for the reasons that follow, the Court finds that Defendant cannot demonstrate that his parents, who were never married, ever achieved a "legal separation," as the Second Circuit has defined the term.

**2.** Also on September 7, 2012, Defendant filed a separate motion to suppress his post-arrest statements and other evidence obtained following an allegedly unreasonable stop, search, and seizure. On December 4, 2012, the Court denied part of the motion to suppress because Defendant lacked standing to challenge the recovery of evidence from a vehicle in which he was traveling as a passenger on the day of his arrest. However, the Court reserved on the remaining issue presented in the motion to suppress—namely, whether officers had reasonable suspicion to stop the vehicle in which Defendant was traveling. As to that issue, the Court held an evidentiary hearing over the course of both January 9, 2013 and January 24, 2013. On January 24, 2013, the Court denied the remainder of Defendant's motion to suppress. This memorandum addresses only Defendant's motion to dismiss and not his motion to suppress.

**3.** Although Congress repealed 8 U.S.C. § 1432 in 2000 and replaced it with 8 U.S.C. § 1431, which, *inter alia*, eliminates the "legal separation" condition, it is undisputed for purposes of this motion that § 1431 does not apply retroactively. (Mem. 3 n. 1; Opp'n 5–6); *see Drakes v. Ashcroft*, 323 F.3d 189, 191 (2d Cir.2003).

**4.** Defendant does not argue that he derives citizenship from his father under any other subsection of § 1432(a), nor can he.

## A. "Legal Separation" Requirement

■ "A petitioner claiming derivative citizenship bears the burden of proving his eligibility by a preponderance of the evidence." *Fisher v. Mukasey*, No. 08 Civ. 1812(JFB), 2008 WL 4693135, at *17 (E.D.N.Y. Oct. 22, 2008); *see Berenyi v. Dist. Dir.*, 385 U.S. 630, 637, 87 S.Ct. 666, 17 L.Ed.2d 656 (1967) (applying standard in context of petition for naturalization); *Bagot v. Ashcroft*, 398 F.3d 252, 256–57 (3d Cir.2005) (applying standard in context of challenge to deportation); *McConney v. INS*, 429 F.2d 626, 630 (2d Cir.1970) (same). "[A]ny doubts regarding a petitioner's citizenship status 'should be resolved in favor of the United States and against [the petitioner].'" *Fisher*, 2008 WL 4693135, at *6 (quoting *Berenyi*, 385 U.S. at 637, 87 S.Ct. 666).

The term "legal separation" within § 1432(a)(3) is not defined by the statute. In construing the statute, the government argues that the term generally presupposes a valid marriage and that, because Defendant's parents were never married and could not have obtained a separation under Jamaican law, they could not have obtained a "legal separation" under § 1432(a)(3). (*See* Opp'n 11–12.) The Court agrees.

"Every circuit that has considered the issue has found a marriage requirement in the term 'legal separation.'" *Johnson v. Whitehead*, 647 F.3d 120, 125 (4th Cir. 2011) (collecting cases); *see Lewis v. Gonzales*, 481 F.3d 125, 130 (2d Cir.2007); *Morgan v. Att'y Gen. of the United States*, 432 F.3d 226, 234 (3d Cir.2005); *Barthelemy v. Ashcroft*, 329 F.3d 1062, 1065 (9th Cir.2003); *Nehme v. INS*, 252 F.3d 415, 425–26 (5th Cir.2001). As the Second Circuit has emphasized, such a result directly flows from the bi-furcated structure of § 1432(a)(3):

[B]ecause the second clause of § 1432(a)(3) explicitly provides for the circumstance in which "the child was born out of wedlock," we cannot interpret the first clause to silently recognize the same circumstance, and moreover, to do so by excusing the express requirement of a legal separation.... As strange as it may at first appear, this feature of the statute is a principled one. The governing principle ... is respect for the rights of an alien parent who may not wish his child to become a U.S. citizen.

*Lewis*, 481 F.3d at 130.

For this reason, although the Second Circuit in *Lewis* left "open the possibility, however remote, that some jurisdiction might allow unwed couples to achieve a legal separation," *Lewis*, 481 F.3d at 130 n. 4, it took care to note that a legal separation under such circumstances would still be required, *id.* at 130. Here, Defendant does not claim that his birth parents ever obtained a legal separation in Jamaica, and, in any event, Jamaican law forecloses the possibility because it does not recognize common law marriages or allow for legal separation as between unmarried persons. (*See* McGinley Decl. Ex. 16 (Library of Congress Report prepared in *Henry v. Quarantillo*, 414 Fed.Appx. 363 (2d Cir.2011))). Thus, as applied to Defendant, *Lewis* requires his birth parents in Jamaica to have been married in Jamaica in order to have achieved a "legal separation" under § 1432(a)(3).

Despite Defendant's arguments to the contrary, the Second Circuit's decision in *Brissett v. Ashcroft*, 363 F.3d 130 (2d Cir. 2004), does not compel a different conclusion. There, the Second Circuit explained that the Immigration and Naturalization Service ("INS") had interpreted the term "legal separation" to require that "the separation be pursuant to proceedings

... which terminate [a] marriage completely, as by absolute divorce, or which merely separate the parties without destroying the marital status." 363 F.3d at 133 (internal quotation marks omitted). The Court sanctioned the INS's interpretation and held that, because "an informal separation is not sufficient to render the parties legally separated, [the] children of informally separated parents do not automatically acquire citizenship [under the first clause of § 1432(a)(3) ] when their custodial parent is naturalized." *Id.* at 134–35; *see Lewis,* 481 F.3d at 130–131 (noting that "legal separation" is determined without regard to the "practical state of affairs" of the family and that "because derivative citizenship is automatic, and because the legal consequences of citizenship can be significant, the statute is not satisfied by an informal expression, direct or indirect"). Rather, § 1432(a)(3) "requires a formal act which, under the laws of the state or nation having jurisdiction of the *marriage,* alters the *marital relationship* either by terminating the *marriage* (as by divorce), or by mandating or recognizing the separate existence of the *marital parties.*" *Brissett,* 363 F.3d at 134 (emphasis added). The Court in *Brissett* therefore concluded that birth parents' *de facto* separation, even when coupled with documents such as a child support order and two orders of protection against the birth father, fail to satisfy this standard. *Id.* at 131–32, 137.

In the face of this clear authority, Defendant argues that, although Duke and Beverly were never married and never obtained a legal separation order in Jamaica, "the subsequent marriage of [Duke]" was a "formal, legal act [that] altered [the] relationship [between Duke and Beverly] and recognized their separate existence, thus satisfying the Second Circuit's construction of the 'legal separation requirement.'" (Reply 5.) However, Defendant

cites no authority—and the Courts finds none—for the proposition that a father's marriage to one woman constitutes a "formal act" of separation from another woman with whom he had a child but was never married. Indeed, Defendant's position cannot be squared with the clear weight of authority detailed above.

Equally unavailing is Defendant's argument that the "legal separation" of his parents is "confirmed by the sworn written document prepared for officials in Jamaica by Beverly ... in which she relinquished her parental rights and ceded custody of her son to his father and stepmother." (Mem. 5; *see* Smith Aff. ¶ 5.) The Second Circuit has held that the documents that might be sufficient to demonstrate legal custody are generally *insufficient* to demonstrate legal separation. *Lewis,* 481 F.3d at 130 ("The fact that Lewis's mother agreed to transfer Lewis to his father establishes legal *custody,* but not legal *separation.*"); *see Brissett,* 363 F.3d at 135–36; *see also Henry v. Quarantillo,* 414 Fed.Appx. 363, 365 (2d Cir.2011) (holding that a Jamaican court order that noted the child's parents' separation did not demonstrate a "legal separation," but only that the child's parents were separated as a factual matter). Assuming *arguendo* that the document—which Defendant has not even provided to the Court—does, in fact, relate to Beverly's status as a custodial parent and not to Beverly's relationship with Duke, it has no impact as to whether Beverly and Duke had a "legal separation" under § 1432(a)(3), which, in any event, is an impossibility under Jamaican law without first securing a legal marriage. *See Lewis,* 481 F.3d at 130; (McGinley Decl. Ex. 16 (Library of Congress Report prepared in *Henry,* 414 Fed.Appx. 363)).

Accordingly, because Defendant has failed to demonstrate that Duke and Beverly were "legally separated" under

§ 1432(a)(3) at the time of Duke's naturalization, the Court finds that Defendant has not established that he is entitled to derivative citizenship.

## B. Constitutional Challenge to § 1432(a)(3)

Defendant also contends that the government's interpretation of "legal separation"—a reading that the Court adopts above—is unconstitutional because it violates the Equal Protection Clause on the bases of Defendant's legitimacy and gender. For the reasons set forth below, the Court rejects Defendant's constitutional arguments.

### a. Canon of Constitutional Avoidance

 As a preliminary matter, Defendant urges the Court to employ the canon of constitutional avoidance to lend a meaning to the term "legal separation" different from its plain meaning and from what the Second Circuit's case law suggests. Under the canon of constitutional avoidance, courts are to avoid interpreting ambiguous statutes in a way that would raise constitutional concerns. *See, e.g., INS v. St. Cyr,* 533 U.S. 289, 299–300, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). However, the canon has "no application" where the statutory language at issue is unambiguous. *United States v. Oakland Cannabis Buyers' Coop.,* 532 U.S. 483, 494, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001); *accord United States v. Magassouba,* 544 F.3d 387, 404 (2d Cir. 2008) ("Only if we conclude that statutory language is ambiguous do we resort to canons of construction . . . ." (internal quotation marks omitted)).

In support of his argument that the term "legal separation" is ambiguous, Defendant relies primarily on *Grant v. United States Department of Homeland Security,* in which the Second Circuit applied the canon of constitutional avoidance after noting that § 1432(a) "is somewhat ambiguous . . . as to . . . whether a legitimated alien must . . . show that his father had *legal custody*." 534 F.3d 102, 105 (2d Cir. 2008) (emphasis added). The Second Circuit in *Grant* reasoned—in *dicta*—that if the "legal custody" requirement "applies only in the context of a legal marriage," then "it may be virtually impossible for the natural father of an alien child to perform any act that would give the child derivative citizenship." *Id.* at 105–06. Therefore, "[t]o avoid [that] serious constitutional and statutory problem[ ]," the Second Circuit "assume[d], without deciding, that naturalization of the father and legitimation of the child before the child reached the age of eighteen would create derivative citizenship." *Id.* at 106.

However, while the Second Circuit in *Grant* held that the "legal custody" requirement is ambiguous, it did *not* address the "legal separation" requirement, nor did it disturb the Second Circuit's prior holding in *Lewis* that the "legal separation" requirement under § 1432(a)(3) is unambiguous, even in cases where the petitioner's parents were never married. *Lewis,* 481 F.3d at 129 (declining to apply *Chevron* deference because Congress "has directly [and unambiguously] spoken to the precise question"). Indeed, although *Grant* post-dates the Second Circuit's binding authority in *Lewis,* the Second Circuit in *Grant* did not quote from or even cite *Lewis,* undermining any claim that *Grant* should be read to modify *Lewis* and its reading of the "legal separation" requirement. *See Grant,* 534 F.3d at 105–06; *cf. id.* at 108 ("Because Grant would not be eligible for citizenship even in the absence of a 'legal custody' requirement, we do not address whether that requirement exists for out-of-wedlock children or whether, if it does, it is constitutional.") The lack of ambiguity in "legal separation" is only further confirmed by the fact that the *Lewis* court specifically noted that ev-

ery other court to address the term had held that the "first clause of § 1432(a)(3) requires a legal separation even if the child's parents never married." *Lewis*, 481 F.3d at 130 (collecting cases); *see, e.g., Barthelemy v. Ashcroft*, 329 F.3d 1062, 1065 (9th Cir.2003). As noted above, this conclusion is plain from the disjunctive structure of the provision itself.

Accordingly, because the "legal separation" requirement is unambiguous, the Court finds that the canon of constitutional avoidance does not apply to alter the meaning of the term as previously interpreted by the Second Circuit.

### b. Alleged Discrimination Based on Legitimacy

■ Because the canon of constitutional avoidance does not apply, the Court addresses Defendant's first constitutional challenge to § 1432(a)(3)—namely, that the statute unconstitutionally distinguishes between children born to married parents and children born to unmarried parents. In addressing a constitutional challenge under the Equal Protection Clause, the Court must ask whether a "recognizable, distinct class" has been "singled out for different treatment under the laws, as written or as applied." *Castaneda v. Partida*, 430 U.S. 482, 494, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); *cf. Genco Importing Inc. v. City of New York*, 552 F.Supp.2d 371, 381 (S.D.N.Y.2008) ("[A] plaintiff generally will prevail on a facial challenge only if [he] demonstrates also that the statute is invalid as applied...."). Here, Defendant has standing to assert a constitutional challenge to § 1432(a)(3) based upon legitimacy because the provision creates a classification as to whether or not a child has been legitimated, "automatically conferring citizenship on legitimate children when the parent with sole custody after a legal separation naturalizes and on out of wedlock children only when the mother natural-

izes." *Johnson*, 647 F.3d at 127. Nevertheless, an examination of Defendant's constitutional challenge on the merits reveals that he has failed to establish an Equal Protection violation.

■■ As an initial matter, the Court's review of § 1432(a) is limited because "Congress has nearly plenary power to establish the qualifications for citizenship." *Barthelemy*, 329 F.3d at 1068; *accord Johnson*, 647 F.3d at 126–27 (citing *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977)). Indeed, "over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." *Fiallo*, 430 U.S. at 792, 97 S.Ct. 1473 (internal quotation marks omitted). Therefore, the Court must uphold the constitutionality of § 1432(a)(3) if a "facially legitimate and bona fide reason" supports the distinction made in the statute. *Id.* at 794–95, 97 S.Ct. 1473; *accord Barthelemy*, 329 F.3d at 1065–66. The Second Circuit has equated this standard of review with rational basis review. *Azizi v. Thornburgh*, 908 F.2d 1130, 1133 n. 2 (1990).

■ The Court finds that Congress had a rational basis here in distinguishing between legitimate (or legitimated) and illegitimate children. Read as a whole, § 1432(a) "provides automatic citizenship to children born abroad of alien parents only after the naturalization of *both* biological parents." *Barthelemy*, 329 F.3d at 1066. Such a policy is rational because it protects the parental rights of alien parents who do not naturalize. In the event that only one parent naturalizes, the parent who does not naturalize might have good reason not to want his or her child to automatically become a United States citizen. *See Wedderburn v. INS*, 215 F.3d 795, 800 (7th Cir.2000) ("Both the child and the surviving but non-custodial [alien] parent may have reasons to prefer the child's

original citizenship, which may affect obligations such as military service and taxation.").

"Nonetheless, recognizing that this general rule of derivative citizenship might sweep too broadly, Congress carved out three additional avenues to citizenship in [§ 1432(a) ] that apply where only one parent naturalizes." *Barthelemy*, 329 F.3d at 1066. In such situations, § 1432(a) " 'limits automatic changes to situations in which the other parent has been removed from the picture' " to some degree. *Johnson*, 647 F.3d at 127 (quoting *Wedderburn*, 215 F.3d at 800). This removal can occur if: (1) the surviving parent naturalizes and the alien parent is deceased; (2) the naturalized father has not legitimated his child and the mother naturalizes; or (3) the parents underwent a legal separation and the naturalized parent has legal custody of the child. 8 U.S.C. § 1432(a)(1)-(3); *cf. Brandao v. Att'y Gen. of United States*, 654 F.3d 427, 430 (3d Cir.2011) (explaining that § 1432(a) furthers the "important governmental objective of allowing single parent derivative citizenship while protecting the rights of alien parents by limiting circumstances in which it (derivative citizenship) can occur" (internal quotation marks omitted)). Of course, "these three categories [might] not cover every conceivable situation in which the rights of . . . one parent should be elevated above those of the other"; nevertheless, that is not to say that the categories that Congress *did* choose are irrational. *Johnson*, 647 F.3d at 127; *accord Barthelemy*, 329 F.3d at 1067; *see also United States v. Casasola*, 670 F.3d 1023, 1029 (9th Cir.2012) ("With the benefit of hindsight, the requirement does not appear to serve the purpose of protecting the rights of the noncitizen parent in this case, where the mother herself became a citizen not long after the father, but that does not make the statute irrational, only imperfect."); *Wedderburn*, 215 F.3d at 800 ("A law does not become unconstitutional just because it does not fit 100% of the cases; mismatches between legal rules and the world at large are inevitable.").[5]

By distinguishing between alien parents, the statute protects the rights of those alien parents still "in the picture" by preventing naturalized parents from usurping their rights with respect to the citizenship of their children. Such a "facially legitimate and bona fide reason" underlying the statutory scheme rationally supports the distinction made in the statute. Accordingly, like the other courts to address this issue, the Court finds that § 1432(a) is not unconstitutional on the basis of legitimacy. *See Johnson*, 647 F.3d at 126–27; *Catwell v. Att'y Gen. of U.S.*, 623 F.3d 199, 210–211 (3d Cir.2010); *Barthelemy*, 329 F.3d at 1065–67; *Wedderburn*, 215 F.3d at 802.

### c. Alleged Discrimination Based on Gender

■ Defendant next argues that the government's construction of § 1432(a)(3) unconstitutionally distinguishes between unwed mothers and unwed fathers. The Court finds that Defendant's constitutional challenge is unavailing because he cannot demonstrate an as-applied gender-based classification in § 1432(a)(3).[6]

---

5. This is not to say that a parent who has legal custody, but not "legal separation" from a child-petitioner's other parent, is left without recourse under the law. Under 8 U.S.C. § 1433(a), such a parent may "apply for naturalization on behalf of a child born outside of the United States who has not acquired citizenship automatically." *See Lewis*, 481 F.3d at 132 (explaining that it " 'would be unsound' to read § 1432 independently of § 1433" (quoting *Wedderburn*, 215 F.3d at 800)). That Duke did not apply for Defendant's naturalization under § 1433 does not provide a reason to find § 1432 irrational.

6. Because Defendant's as-applied challenge to § 1432(a)(3) fails, any facial challenge he

As an initial matter, the second clause of § 1432(a)(3) is plainly inapplicable to Defendant because Duke legitimated him. (*See* Mem. 9 ("[Defendant] was legitimated by his father before the age of eighteen."); Schretzman Decl. Ex. A (birth certificate that Duke signed acknowledging his paternity).) Thus, as a legitimated child, Defendant could only have achieved derivative citizenship if, prior to his age of majority: (1) both of his parents naturalized; (2) one of Defendant's parents had died and the surviving parent naturalized; or (3) his parent having legal custody naturalized following his parents' legal separation. *See Wedderburn*, 215 F.3d at 802. Each of these options—including that under the first clause of § 1432(a)(3)—is gender neutral. *See Marquez–Morales v. Holder*, 377 Fed.Appx. 361, 365 (5th Cir.2010). Indeed, had Defendant's *mother* naturalized in 1998 instead of his father and had legal custody of him, Defendant's mother could not have conferred derivative citizenship upon him any more than his father could have because neither had achieved a "legal separation," as the term is defined above. Therefore, the Court rejects Defendant's constitutional challenge based on gender discrimination because he has not demonstrated a gender-based classification in the statute. *Barthelemy*, 329 F.3d at 1068 ("A child born out of wedlock who had never been legitimated might have a gender-based equal protection claim [under § 1432(a)(3) ], albeit a losing one ..., but a legitimated child such as [p]etitioner has no such claim at all." (internal quotation marks omitted)); *Wedderburn*, 215 F.3d at 802 ("[A] legitimated child ... has no sex-discrimination claim at all."); *Cartagena–Paulino v. Reno*, No. 08 Civ. 2371(LTS)(JCF), 2003 WL 21436224, at *3 n. 8 (S.D.N.Y. June 20, 2003) ("Since the

petitioner is not illegitimate, he has no standing to bring a claim that § [1432](a)(3) discriminates against the fathers of illegitimate children.").

■ Even assuming *arguendo* that Defendant had demonstrated a gender-based classification, the Court would still conclude that § 1432(a)(3) is not unconstitutional. The Court assumes, without deciding, that Defendant would be entitled to the heightened standard of scrutiny applicable to gender-based classifications. *See Craig v. Boren*, 429 U.S. 190, 197–98, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). However, Defendant's gender-based claim is foreclosed by the Supreme Court's decision in *Nguyen v. INS*, 533 U.S. 53, 121 S.Ct. 2053, 150 L.Ed.2d 115 (2001). *See Grant*, 534 F.3d at 106–08 (finding that *Nguyen* foreclosed a constitutional challenge based on the argument that § 1432(a) discriminated against the fathers of alien children by requiring fathers, but not mothers, to legitimate their children). In *Nguyen*, the Supreme Court explained in the citizenship context that "Congress' decision to impose requirements on unmarried fathers that differ from those on unmarried mothers is based on the significant difference between their respective relationships to the potential citizen at the time of birth." *Nguyen*, 533 U.S. at 62, 121 S.Ct. 2053. The Court held that imposing different requirements for citizenship on unwed mothers and fathers survived heightened scrutiny because it was substantially related to serving the important governmental interests of "assuring that a biological parent-child relationship exists" and "ensur[ing] that the child and the citizen parent have some demonstrated opportunity or potential to develop" a more substantial relationship. *Id.* at 62, 121 S.Ct. 2053. Accordingly, Defendant's gender-based claim must also

---

brings must fail as well. *See Reno v. Flores,* 507 U.S. 292, 301, 113 S.Ct. 1439, 123

L.Ed.2d 1 (1993); *Genco Importing,* 552 F.Supp.2d at 381.

fail because, based on a plain reading of *Nguyen,* any gender-based distinction in § 1432(a)(3) would survive heightened scrutiny. *Barthelemy,* 329 F.3d at 1068; *Catwell,* 623 F.3d at 210–211; *Marquez–Morales,* 377 Fed.Appx. at 365.

### III. CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion to dismiss Count One of the Indictment. Specifically, the Court finds that Defendant (1) has not satisfied the requirements for derivative citizenship set forth in 8 U.S.C. § 1432(a) and (2) has failed to demonstrate that the statute is unconstitutional on the bases of legitimacy or gender discrimination.

In light of the Court's ruling, the parties are directed to comply with the pretrial and trial schedule set forth in the Court's Order, dated January 24, 2013.

SO ORDERED.