15-3134-ag
*Gil v. Sessions*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2016

(Argued:  October 31, 2016          Decided:  March 17, 2017)

Docket No. 15-3134-ag

JULY RAFAEL BUENO GIL,

*Petitioner*,

v.

JEFFERSON B. SESSIONS III, United States Attorney General,

*Respondent.*[*]

ON PETITION FOR REVIEW FROM THE
BOARD OF IMMIGRATION APPEALS

Before:

WALKER, HALL, and CHIN, *Circuit Judges*.

---

[*]       Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Jefferson B. Sessions III is substituted for former Attorney General Loretta E. Lynch as respondent.

Petition for review of a decision of the Board of Immigration

Appeals affirming the decision of an Immigration Judge finding petitioner

ineligible for derivative citizenship and denying his motion to terminate removal

proceedings.

PETITION DENIED.

---

JOSHUA E. BARDAVID, New York, New York, *for Petitioner*.

LISA M. DAMIANO, Trial Attorney, Terri J. Scadron, Assistant Director, Office of Immigration Litigation, Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., *for Respondent*.

---

CHIN, *Circuit Judge*:

Petitioner July Rafael Bueno Gil ("Gil") seeks review of a September

10, 2015 decision of the Board of Immigration Appeals ("BIA") affirming the

decision of an Immigration Judge ("IJ") finding him ineligible for derivative

citizenship and denying his motion to terminate removal proceedings. Gil was

born in the Dominican Republic and was admitted to the United States as a

lawful permanent resident. His parents never married. Gil contends that he

became a U.S. citizen derivatively when his father was naturalized in 1980, when Gil was eleven years old. The IJ and the BIA determined that Gil was not a "child" eligible for derivative citizenship because he was not "legitimated" within the meaning of the Immigration and Nationality Act (the "INA"). We agree and, accordingly, we dismiss the petition for review.

## BACKGROUND

The facts are undisputed. Gil was born out of wedlock on December 6, 1968 in the Dominican Republic to two Dominican citizens. His parents never married. In December 1974, his father appeared before a State Civil Official of the National District of the Dominican Republic, publicly acknowledged Gil as his biological son, and declared paternity over him. Gil's mother died in January 1976. Gil entered the United States in February 1978, when he was nine years old, as a lawful permanent resident and lived with his father.

Gil's father became a naturalized U.S. citizen in November 1980, when Gil was eleven years old. Gil thereafter received a Certificate of Citizenship on the basis that he derived citizenship as a result of his father's naturalization.

Gil was convicted in New York state court of first-degree robbery in January 1987 and was convicted in federal court of a controlled substance offense in August 1995. In September 2010, U.S. Citizenship and Immigration Services ("USCIS") determined that Gil's Certificate of Citizenship was unlawfully or fraudulently obtained because he was not a qualifying "child" under the INA's requirements for derivative citizenship and, as a result, it canceled his Certificate of Citizenship. The Department of Homeland Security instituted removal proceedings, served Gil with a Notice to Appear, and charged him as an alien removable under sections 237(a)(2)(A)(iii) and (B)(i) of the INA, 8 U.S.C. §§ 1227(a)(2)(A)(iii) and (B)(i), based on his convictions.

On November 18, 2013, the IJ rejected Gil's claim to derivative citizenship through his father's naturalization on the basis that Gil did not "legitimate" under Dominican or New York law before reaching the age specified in the INA. The IJ found him removable as charged, denied his motion to terminate the removal proceedings, and ordered him removed to the Dominican Republic. On September 10, 2015, the BIA agreed that Gil did not become a legitimated child before turning sixteen years old, affirmed the IJ's finding that

- 4 -

Gil did not derive citizenship through his father, and affirmed the denial of the motion to terminate removal proceedings.

This petition followed.

*DISCUSSION*

We review the question of derivative citizenship *de novo* where, as here, "the petitioner claims to be a national of the United States" and the record presents "no genuine issue of material fact about the petitioner's nationality." *Morales-Santana v. Lynch*, 804 F.3d 520, 525 (2d Cir. 2015) (quoting 8 U.S.C. § 1252(b)(5)(A)).[1]

A.    **Derivative Citizenship**

To determine whether an alien obtained derivative citizenship through a parent's naturalization, we look to "the law in effect when [petitioner] fulfilled the last requirement for derivative citizenship." *Poole v. Mukasey*, 522 F.3d 259, 264 (2d Cir. 2008) (alteration in original) (quoting *Ashton v. Gonzales*, 431 F.3d 95, 97 (2d Cir. 2005)).

---

[1]    While we generally lack jurisdiction to review final orders of removal against aliens who are removable due to aggravated felony convictions, 8 U.S.C. § 1252(a)(2)(C), we retain jurisdiction to review constitutional claims and questions of law, *id.* § 1252(a)(2)(D).  Thus, we have jurisdiction to consider Gil's claim to derivative citizenship in this case, where there are no disputed facts.  *See id.* § 1252(b)(5)(A) (requiring courts to decide a nationality claim if the petitioner claims to be a national and there are no disputed material facts).

In 1980, when Gil's father became a naturalized citizen, former section 321(a) of the INA provided that:

> A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions:
>
> > (1) The naturalization of both parents; or
> >
> > (2) The naturalization of the surviving parent if one of the parents is deceased; or
> >
> > (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if
> >
> > (4) Such naturalization takes place while such child is under the age of eighteen years; and
> >
> > (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. § 1432(a), *repealed by* Child Citizenship Act of 2000, Pub. L. 106-395, § 103, 114 Stat. 1631, 1632 (2000); *see also Smart v. Ashcroft*, 401 F.3d 119, 122 (2d Cir. 2005). The parties agree that former § 321(a) applies here. *See Smart*, 401 F.3d at 122 ("The CCA changes do not benefit [petitioner] because the CCA is not

retroactive, and [petitioner] was no longer under eighteen years old upon its enactment." (internal citation omitted)).

Section 101(c)(1) of the INA defines the term "child" as

an unmarried person under twenty-one years of age and includ[ing] a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, . . . if such legitimation . . . takes place before the child reaches the age of 16 years . . . , and the child is in the legal custody of the legitimating . . . parent . . . at the time of such legitimation . . . .

8 U.S.C. § 1101(c)(1). The statute "make[s] clear, for derivative citizenship purposes, [that] a person born out of wedlock is considered a 'child' of his United States citizen parent or parents only if he was 'legitimated' under the law of his own residence or domicile (or that of his father) *before* turning 16." *Matter of Cross*, 26 I. & N. Dec. 485, 487 (BIA 2015) (emphasis added).

Although the INA does not define the term "legitimated," the BIA has interpreted it "to refer to a child born out of wedlock who has been accorded legal rights that are identical to those enjoyed by a child born in wedlock." *De Los Santos v. Immigration & Naturalization Serv.*, 690 F.2d 56, 58 (2d Cir. 1982) (citation omitted); *see also In re Cabrera*, 21 I. & N. Dec. 589, 591 (BIA 1996) ("In prior precedent decisions, we have defined legitimation as the act of putting a

child born out of wedlock in the same legal position as a child born in wedlock.") (citation omitted). The BIA has also held that

> a person born abroad to unmarried parents can qualify as a legitimated 'child' under section 101(c)(1) of the Act if he or she was born in a country or State that has eliminated all legal distinctions between children based on the marital status of their parents or has a residence or domicile in such a country or State.

*Cross*, 26 I. & N. Dec. at 485-86.

Gil's claim to derivative citizenship turns on whether he qualified as a legitimated "child" within the meaning of § 101(c)(1). The issue on appeal is whether, before he reached the statutory age of sixteen years old, Gil was "legitimated" under the laws of the Dominican Republic or New York, *i.e.*, whether in that time frame Dominican or New York law had eliminated all legal distinctions between children born in and out of wedlock. The burden falls on Gil to show he met this requirement. *See Grant v. U.S. Dep't of Homeland Sec.*, 534 F.3d 102, 105 (2d Cir. 2008) ("[A]n alien born out of wedlock . . . must show, at a minimum, that he has been legitimated in order to achieve citizenship based on his father's citizenship."); *see also Berenyi v. Dist. Dir., Immigration & Naturalization Serv.*, 385 U.S. 630, 637 (1967) ("[I]t has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect.").

**B.      Application**

**1.      Dominican Law**

Gil concedes he was not a legitimated child under Dominican law at the time his father became a naturalized citizen in 1980.  He argues instead that, due to the retroactive application of a subsequently enacted law, the Dominican Republic now treats him as gaining legitimating status at the time of his birth, well before his father received naturalized citizenship.  We are not persuaded.

In 1980, the Dominican law in effect accorded different succession rights to children born out of wedlock based on whether their parents later married each other.  *See De Los Santos*, 690 F.2d at 58 (referring to Law 985 of Aug. 1, 1945, art. 1).  Under that law, a child born out of wedlock to unmarried parents was entitled to only half the inheritance share attributable to a child born in wedlock or a child born out of wedlock to subsequently married parents.  *See id.* (describing Law 985, art. 10).

In 1994, the Dominican Republic enacted the Code for the Protection of Children (the "Code"), which "changed the Dominican law on parentage and filiation to eliminate all legal distinctions between children born in wedlock and those born out of wedlock."  *In re Martinez-Gonzalez*, 21 I. & N. Dec. 1035, 1038

(BIA 1997) (describing the "enactment of Ley No. 14-19 que crea el Codigo para la Proteccion de Ninos, Ninas y Adolescentes Gaceta Official, Apr. 25, 1994 (enacted Apr. 22, 1994) (hereinafter Code for the Protection of Children)" (alteration omitted)). The new law became effective on January 1, 1995 and "was intended to apply to all present and future legal situations and to legal situations that were established and created before the promulgation of the law and continue in existence after such promulgation." *Id.* (internal quotation marks, citation, and ellipses omitted).

Gil asserts that the Code applied retroactively to legitimate *all* children born out of wedlock, even those who reached adulthood prior to the enactment of the new law. In support, he presents (1) two legal opinions by the Central Electoral Board of the Dominican Republic, which he describes as a judicial body in the Dominican Republic, applying the new law specifically to him and (2) a legal opinion by an expert in Dominican law stating that, due to the new law, the Dominican Republic has always recognized Gil as a legitimated child. Gil therefore concludes that he was a "child" within the meaning of § 101(c)(1) because he was "legitimated" under Dominican law at the time of his father's naturalization, by virtue of the Code's retroactive effect.

- 10 -

Section 101(c)(1), however, explicitly requires that the legitimation occur "before the child reaches the age of 16 years." 8 U.S.C. § 1101(c)(1). The legitimizing act at issue here was the enactment of the Code, a law that became effective well after Gil's sixteenth birthday. *See Martinez-Gonzalez*, 21 I. & N. Dec. at 1038 (holding, with respect to the analogous provision at § 101(b)(1)(C), that "[t]he legitimizing act in the case of Dominican law could be either the change in the law itself or the acknowledgement of paternity"). Because Gil did not gain legitimated status under the new law before he turned sixteen years old, he is not a legitimated child within the plain meaning of § 101(c)(1). *See id.* at 1038-39 (concluding that children who reached the statutory age limit "prior to January 1, 1995, the effective date of the Code for the Protection of Children, and who were not legitimated under the former Dominican law," could not satisfy the requirements in § 101(b)(1)(C) because the legitimating act -- the change in Dominican law -- came too late); *see also Anderson v. Holder*, 673 F.3d 1089, 1100 (9th Cir. 2012) ("[W]hen legal distinctions are eliminated between children born to married parents and those born out of wedlock, the children born out of wedlock are deemed to be legitimated as of the date the laws are changed." (internal quotation marks and citation omitted)).

- 11 -

Gil's argument, rejected by the IJ and BIA, that the new Dominican law treats his legitimation as occurring at the time of birth is inapposite because § 101(c)(1) does not incorporate Dominican law in setting forth the timing requirement. *See* 8 U.S.C. § 1101(c)(1) (defining "child" as including a child legitimated under the law of the child's or father's residence or domicile "if such legitimation . . . takes place before the child reaches the age of 16 years"). Rather, Gil's legitimation took place on January 1, 1995, when the Code took effect, and when he was twenty-six years old.

Accordingly, Gil was not a "child," as defined in § 101(c)(1), based on the Code because the elimination of legal distinctions between children born in and out of wedlock under Dominican law did not occur before his sixteenth birthday.

## 2. New York Law

Nor did Gil qualify as a "child" under § 101(c)(1) based on New York law, which distinguishes between children born in and out of wedlock for inheritance purposes. *See* N.Y. Est. Powers & Trusts Law § 4-1.2(b) (McKinney 2010) (describing paternity conditions under which non-marital children are treated as marital children with respect to inheritance rights); *see also Lalli v. Lalli*,

439 U.S. 259, 272-73 (1978) (holding that § 4-1.2 bars children born out of wedlock, but not those born in wedlock, from exercising inheritance rights if they lack proper evidence of paternity). Gil does not identify any legal authority suggesting that New York has eliminated all legal distinctions between children based on the marital status of their parents. *See Cross*, 26 I. & N. Dec. at 485-86.

Accordingly, Gil was not a legitimated "child" as the term is defined in § 101(c)(1) and used in former § 321(a), and he therefore was not eligible under the INA for derivative citizenship through his father's naturalization.

### *CONCLUSION*

For the foregoing reasons, the petition for review is DENIED.