*Gonzalez-Reyes v. Whitaker*

BIA
Reid, IJ
A042 701 219

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30ᵗʰ day of November, two thousand eighteen.

PRESENT:     DENNY CHIN,
             RAYMOND J. LOHIER, JR.,
                     *Circuit Judges*,
             JOHN F. KEENAN,
                     *District Judge.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MANUEL GONZALEZ-REYES, AKA Manuel
Nicolas Gonzalez-Reyes,
                 *Petitioner*,

                 v.                                17-60

MATTHEW G. WHITAKER, Acting United States
Attorney General,
                 *Respondent.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

* Judge John F. Keenan, of the United States District Court for the Southern District of New York, sitting by designation.

FOR PETITIONER:                         ANDREW D. O'TOOLE, O'Toole & O'Toole
                                        PLLC, Hartford, CT

FOR RESPONDENT:                         STEFANIE NOTARINO HENNES, Trial
                                        Attorney (Terri J. Scadron, Assistant Director,
                                        Office of Immigration Litigation, *on the brief)*,
                                        *for* Chad A. Readler, Assistant Attorney
                                        General, Civil Division, United States
                                        Department of Justice, Washington, DC

**UPON DUE CONSIDERATION** of this petition for review of a Board of
Immigration Appeals ("BIA") decision**, IT IS HEREBY ORDERED, ADJUDGED, AND
DECREED** that the petition for review is **DENIED.**

Petitioner Manuel Gonzalez-Reyes, a native and citizen of the Dominican
Republic, seeks review of the December 16, 2016 decision of the BIA affirming the
August 10, 2016 decision of an immigration judge ("IJ") ordering him removed to the
Dominican Republic. *In re Manuel Gonzalez-Reyes*, No. A042 701 219 (B.I.A. Dec. 16,
2016), *aff'g* No. A042 701 219 (Immig. Ct. Batavia Aug. 10, 2016).

Gonzalez-Reyes was born outside the United States, in 1972, of alien
parents who were not married. His father relocated to the United States and was
naturalized as an American citizen in 1979. In 1990, at the age of 17, Gonzalez-Reyes
was admitted to the United States as a lawful permanent resident, in his father's
custody. Gonzalez-Reyes contends that he became a United States citizen derivatively
through his father's naturalization. Both the IJ and the BIA rejected the claim of

- 2 -

derivative citizenship. We assume the parties' familiarity with the underlying facts and procedural history in this case.

We have jurisdiction to review Gonzalez-Reyes's derivative citizenship claim despite the bar to review based on his criminal convictions because citizenship is a question of law. 8 U.S.C. § 1252(a)(2)(C), (D); *Gil v. Sessions*, 851 F.3d 184, 186 n.1 (2d Cir. 2017). "We review the question of derivative citizenship *de novo* where, as here, the petitioner claims to be a national of the United States and the record presents no genuine issue of material fact about the petitioner's nationality." *Gil*, 851 F.3d at 186 (internal quotation marks omitted); *see also* 8 U.S.C. § 1252(b)(5)(A).

In determining whether Gonzalez-Reyes derived citizenship through his father's naturalization, we look to the law in effect at the time Gonzalez-Reyes claims he fulfilled the last requirement for derivative citizenship. *See Gil*, 851 F.3d at 186. In 1990, when Gonzalez-Reyes entered the United States as a permanent resident, the law governing derivative citizenship provided in relevant part that "[a] child born outside of the United States of alien parents . . . becomes a citizen of the United States" upon:

> The naturalization of the parent having legal custody of the child
> when there has been a legal separation of the parents or the
> naturalization of the mother if the child was born out of wedlock
> and the paternity of the child has not been established by
> legitimation . . . .

8 U.S.C. § 1432(a)(3) (1988), *repealed by* Child Citizenship Act of 2000, Pub. L. No. 106-395, § 103, 114 Stat. 1631, 1632 (2000).[1]

Two issues are presented:  first, as a matter of statutory interpretation, whether Gonzalez-Reyes fits within the first clause of subsection (3), quoted above, which requires a "legal separation of the parents"; and, second, as a constitutional matter, whether subsection (3) violates Gonzalez-Reyes's right to equal protection of the law.  We address both issues in turn.

## I.    *Statutory Interpretation*

The first clause of subsection (3) provides that a child born outside the United States of alien parents becomes a United States citizen upon "the naturalization of the parent having legal custody of the child *when there has been a legal separation of the parents*."  8 U.S.C. § 1432(a)(3) (emphasis added).  Here, while it is undisputed that the "naturalization" and "legal custody" elements were met with respect to Gonzalez-Reyes's father, the question is whether he established a "legal separation" of his parents.  We conclude that he did not.

---

[1]    Derivative citizenship could also be obtained in other ways not at issue here.  *See* 8 U.S.C. §§ 1432(a)(1) (naturalization of both parents), 1432(a)(2) (naturalization of surviving parent if one parent is deceased).  In addition, the parties agree that the other conditions for derivative naturalization were met here.  *Id.* §§ 1432(a)(4) (naturalization of parent (or parents) takes place while child was under eighteen years of age), 1432(a)(5) (residency requirement for child).

Legal separation is shown by "a formal act which, under the laws of the state or nation having jurisdiction of the marriage, alters the marital relationship either by terminating the marriage (as by divorce), or by mandating or recognizing the separate existence of the marital parties." *Brissett v. Ashcroft*, 363 F.3d 130, 134 (2d Cir. 2004). These formal acts include actual orders of divorce or separation. *Id.* "Moreover, some orders that the relevant state or nation might not characterize as creating a legal separation may nonetheless effect such a drastic change in the couple's marital existence that the couple may be considered legally separated for purposes of § 1432(a)(3)." *Id.* This legal separation requirement applies even where the parents were never married. *See Lewis v. Gonzales*, 481 F.3d 125, 130 (2d Cir. 2007) ("Subsection 1432(a)(3)'s first clause explicitly requires a legal separation; our function, which is limited to interpretation, does not allow us to obviate a literal requirement.").

Gonzalez-Reyes's situation is identical to that in *Lewis*. While there is no dispute that Gonzalez-Reyes was in his father's legal custody before the age of 18, he cannot show that his parents were legally separated because they were never married. The fact that Gonzalez-Reyes's father subsequently married another woman is not a basis for finding a legal separation from Gonzalez-Reyes's mother for two reasons. First, there was no marital relationship with her to alter. *See Brissett*, 363 F.3d at 134 (separation refers to acts that formally "alter[] the *marital* relationship . . . or recogniz[e] the separate existence of the *marital* parties" (emphasis added)). Second, the "governing

principle" of the legal separation requirement "is respect for the rights of an alien parent who may not wish [her] child to become a U.S. citizen." *Lewis*, 481 F.3d at 130. Allowing a legal separation to be accomplished by an independent act of the United States-citizen parent would violate this principle.

Nor does the canon of constitutional avoidance compel this Court to interpret the term "legal separation" to include later marriages of the members of an unmarried couple to other people. "The so-called canon of constitutional avoidance is an interpretive tool, counseling that ambiguous statutory language be construed to avoid serious constitutional doubts." *Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009). But "legal separation" is not an ambiguous term; "this Court has consistently construed the term . . . to apply only to marital relationships." *Pierre v. Holder*, 738 F.3d 39, 48 (2d Cir. 2013); *accord Lewis*, 481 F.3d at 130 ("legal separation" is a "literal requirement" that cannot be ignored even where parents never married).

## II.    *Equal Protection*

Gonzalez-Reyes also challenges the constitutionality of § 1432(a)(3). As he acknowledges, however, we have already held that § 1432(a)(3) does not violate equal protection, *Pierre*, 738 F.3d at 50-58, and we are "bound by a prior panel's decision until it is overruled either by this Court sitting *en banc* or by the Supreme Court." *Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 378 (2d Cir. 2016). Gonzalez-Reyes argues that the

Supreme Court's decision in *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017), is an intervening decision that overrules or abrogates *Pierre*. An intervening decision need not directly address "the precise issue decided by the panel," but must break "the link . . . on which we premised our [prior] decision" or "undermine[]" the assumptions made in that decision. *Doscher*, 832 F.3d at 378 (first alteration in original). Because *Morales-Santana* addresses a different statute, and the outdated gender stereotypes at issue in that case are not present here, this panel cannot depart from our prior decision in *Pierre*.

In *Pierre*, we held that § 1432(a)(3) did not violate the Equal Protection Clause by discriminating on the basis of legitimacy or sex because the statute was sufficiently tailored to protect the interests of the non-custodial parent who has intact parental rights. 738 F.3d at 51 (holding that "§ 1432(a) does not discriminate on the basis of a protected class," and that "§ 1432(a), although referring in one subsection, (a)(3), to children born out of wedlock, did not classify based on legitimacy"). We further observed:

> [V]iewing § 1432(a) as a whole, the marital status of a child's parents at the time of birth did not determine the child's eligibility for automatic citizenship. A child born out of wedlock was as eligible as a child born to married parents to obtain automatic derivative citizenship based on the naturalization of both parents, see 8 U.S.C. § 1432(a)(1), or the naturalization of the sole surviving parent, see *id.* § 1432(a)(2). And, fairly read, § 1432(a)(3) does not impose extra burdens on children born out of wedlock. Instead, it attempts to address, in a pragmatic fashion, two inherently different contexts in which a child with a living non-citizen parent might acquire citizenship: one involving children with once-

> married parents, and the other involving children out of wedlock and whose paternity therefore might be unknown.

*Id.* We went on to make clear our view that "the distinction drawn in § 1432(a)(3) did not reflect discrimination based on legitimacy." *Id.*; *see also id.* at 51-56.

The statute at issue in *Morales-Santana*, formerly 8 U.S.C. § 1401(a)(7), provided that for a foreign-born child to acquire United States citizenship through his father, an unwed citizen father had to reside in the United States for ten years prior to the birth of his child. But the statute required only one year of pre-birth residency for unwed mothers. *Morales-Santana*, 137 S. Ct. at 1686. The Supreme Court held that this difference violated the Equal Protection Clause because it discriminated on the basis of gender and relied on an outdated and unjustifiable understanding of gender roles. *Id.* at 1690-98.

The reasoning in *Morales-Santana* does not extend to § 1432(a)(3). Section 1432(a)(3) focuses on two, different situations: first, where a child has two known and living parents, and, second, where the child's mother is the only recognized parent because paternity has not been established. *Pierre*, 738 F.3d at 51; *Lewis*, 481 F.3d at 131. The statute awarded citizenship -- automatically -- in the first situation, where the parents legally separated and the naturalizing parent was the custodial parent, and in the second situation, where the parents had not married and the naturalizing mother was the only recognized parent because the child had not been legitimated. *Pierre*, 738 F.3d at 51. We held that to the extent there is a "gender classification" in § 1432(a)(3), it

was "justified" because "[i]t reflected the practical reality that the interests of the alien father merited protection only where that father had legitimated the child and thereby demonstrated a connection to the child. By contrast, no such act of formal legitimation was necessary with respect to an alien mother, because children are inherently legitimated by their mothers at the moment of birth." *Id.* at 57.

In contrast, the statute in *Morales-Santana* based its different residency requirements on stale gender stereotypes, *i.e.,* overbroad generalizations that "unwed fathers [are] invariably less qualified and entitled than mothers to take responsibility for nonmarital children." *Morales-Santana*, 137 S. Ct. at 1692 (internal quotation marks and citation omitted; alteration in original). The distinction in § 1432(a)(3) is based on "respect for parental rights" and ensures that a parent's undiminished right to determine the citizenship of his or her child is not ignored. *Lewis*, 481 F.3d at 131; *see also Pierre*, 738 F.3d at 51-52. The provision permitting the mother of a child with no legitimated father to automatically pass citizenship to her child is based on the lack of a second, identifiable legal parent and is therefore not called into question by *Morales-Santana*. *See Lewis*, 481 F.3d at 131; *Pierre*, 738 F.3d at 51. We conclude that *Pierre* and *Lewis* have not been abrogated by *Morales-Santana*.

* * * * *

Accordingly, the petition for review is **DENIED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk